## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**GARY EUGENE MADDOX, JR.,**

    *Plaintiff*,

    **v.**

**THE PAROLE COMMISSION OF
MARYLAND AND ITS AGENTS,** *et al.*,

    *Defendants*.

\*                     **Case No. 1:22-cv-01769-JRR**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants Maryland Parole Commission, David R. Blumberg, Dionagelo Patterson, Robyn D. Hall, Timothy Moxey, John Smack, and Jason Keckler's Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 16; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105. (D. Md. 2021). For the reasons that follow, by an accompanying order, the Motion will be granted.

### LEGAL STANDARDS

#### <u>Federal Rule of Civil Procedure 12(b)(1)</u>

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the

jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendants raise a facial challenge to the court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity bars the claims against the Maryland Parole Commission and the individual Defendants sued in their official capacities. (ECF No. 16 at 17.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). Because sovereign immunity is akin to an affirmative defense, a defendant bears the burden of demonstrating that sovereign immunity exists. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

**Federal Rule of Civil Procedure 12(d)**

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for summary judgment under Rule 56. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at *8 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

Here, Maddox had adequate notice that the Motion may be treated as a motion for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment"). Maddox does not argue additional discovery is necessary and did not submit a Rule 56(d) affidavit. *See Harrods*, 302 F.3d at 244 (explaining that "[i]f a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly

oppose a motion for summary judgment without a chance to conduct discovery.'") (quoting *Evans*, 80 F.3d at 961); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the failure to file an affidavit indicating a need for discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."). Accordingly, the court will treat the Motion as one for summary judgment.

### Federal Rule of Civil Procedure 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Further, in undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Critically, on a Rule 56 motion, the court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

## BACKGROUND[1]

*Pro se* Plaintiff Gary Maddox filed this action alleging that Defendants violated his Fourth and Fourteenth Amendment rights during incidents that occurred while Maddox has been on mandatory supervision. (ECF Nos. 1, 9; collectively, the "Complaint"). Defendant David Blumberg is the Chairman of the Maryland Parole Commission (the "Commission"). (ECF No. 16-1 at 1.) Defendants Dionagelo Patterson, Robyn D. Hall, and Timothy Moxey are Maryland Parole and Probation Agents. *Id.* Defendants John Smack and Jason Keckler are Commissioners at the Maryland Parole Commission. *Id.*

---

[1] Unless otherwise stated, the Background section sets forth undisputed facts drawn from the Complaint (ECF No. 1), the Amended Complaint (ECF No. 9), Defendants' Motion (ECF No. 16-1), and Plaintiff's Response (ECF No. 20) thereto. The exhibits to the Motion are almost exclusively public records of which the court takes judicial notice and to which Plaintiff poses no challenge. The balance of the exhibits set forth information with which Plaintiff takes no issue and Plaintiff mounts no challenge. The court notes that Plaintiff filed a Complaint followed by an Amended Complaint, which the court construes as a supplement to the Complaint. Therefore, the court will consider the two together. *See Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 U.S. Dist. LEXIS 18223, at *6 (D. Md. Feb. 8, 2017) (explaining that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers").

I.      **Conviction and Sentence**

In 2014, Maddox was convicted in the Circuit Court for Howard County of two counts of human trafficking.  (ECF No. 16-5 at 3.)  At sentencing, the two violations were merged into one count of "human trafficking-benefit financially."  (ECF No. 16-5 at 3.)  On August 8, 2014, Maddox was sentenced in the Circuit Court for Howard County to a total of ten years.  (ECF No. 16-6 at 1.)  On September 24, 2019, Maddox was released on mandatory supervision.  (ECF No. 16-7 at 1.)  Upon his release, Maddox was subject to supervision by the Maryland Division of Parole and Probation ("DPP") and ordered to comply with ten conditions of mandatory supervision release and eight special conditions of mandatory supervision release.  *Id.* at 2.  Special condition 34 requires Maddox to: "[c]omply as directed by [his] parole/probation agent with the Division of Parole and Probation sexual offender management program, which may include intensive reporting requirements, specialized sex offender treatment, electronic monitoring, medication, polygraph testing, and computer monitoring."  *Id.*  In accordance with special condition 34, the DPP assigned Maddox to its Collaborative Offender Management Enforcement Treatment ("COMET").  (ECF No. 16-7 at 2.)  COMET is an intensive supervision program for sex offenders, which "can include heightened reporting requirements, electronic monitoring, polygraph testing, and specialized treatment."  (ECF No. 16-3 at 2.)

II.     **COMET Supervision**

A.      **September 17, 2020 – Parole Commission Hearing**

On August 6, 2020, Maddox's supervising agent, Agent Hall, notified the Commission that Maddox failed to appear for his polygraph examination and requested the Commission issue a subpoena.  (ECF No. 16-8 at 2-3.)  Instead of issuing a subpoena, the Commission issued a warrant

on grounds that there was reasonable cause to believe Maddox was in violation of his mandatory release conditions as described in the statement of charges.  (ECF No. 16-9 at 1.)

Subsequently, on three occasions, the Commission amended the statement of charges attached to its warrant to reflect additional alleged supervision violations.  (ECF Nos. 16-10; 16-11; 16-12.)  These violations included Maddox's refusal to submit to a urinalysis (ECF No. 16-10), leaving the State of Maryland without permission (ECF No. 16-11), being arrested on an outstanding warrant in this case (ECF No. 16-11), and refusal to attend weekly group sessions for specialized sex offender treatment.  (ECF No. 16-12.)  Subsequently, Maddox wrote a letter to Blumberg requesting that he recall the warrant because he is not on the sex offender registry and does not have sex offender charges.  (ECF No. 16-13.)

Maddox returned to Maryland in accordance with the warrant and on September 8, 2020, acknowledged that he received a copy of the warrant, the statement of charges, and a Notice of Right to Preliminary Hearing.  (ECF No. 16-14.)  Maddox waived his right to counsel and admitted in writing that he violated the conditions of his release as set out in the statement of charges.  *Id.* On September 17, 2020, the Commission held a hearing, and found Maddox guilty of violating the terms and conditions of release by his own admission.  (ECF No. 16-15.)  Commissioner Smack continued Maddox on mandatory supervision release.  *Id.*

Subsequently, on September 29, 2020, Maddox sent a cease-and-desist letter to the Commission demanding that it remove him from COMET because he does not have a record as a sex offender, and that the Commission stop forcing him "to do anything that is not named in the 10 mandatory conditions[.]" (ECF No. 16-16.)  On October 9, 2020, the Commission responded to Maddox's letter explaining that the Commission "has the discretion to order any special conditions that it considers appropriate." (ECF No. 16-17.)  The Commission further explained to

Maddox that "[a]lthough human trafficking superficially appears to be a financial crime, it is in fact a violent crime whereby offenders force victims to engage in sex acts with others in order to reap a monetary reward. For this reason, DPP places individuals convicted of human trafficking under COMET supervision." *Id.*

  **B.**  **November 2, 2021 – Parole Commission Hearing**

  On May 17, 2021, Maddox submitted to a polygraph examination in accordance with special condition 34.  (ECF No. 16-18.)  The test revealed "that deception was indicated in reference to Mr. Maddox leaving the State of Maryland since January 1, 2021." *Id.*  Maddox then stated that he had traveled outside of Maryland.  *Id.*  On May 26, 2021, Agent Patterson informed the Commission that Maddox was not in compliance with the conditions of his mandatory supervision release.  *Id.*  Agent Patterson then requested that the Commission issue a subpoena for Maddox charging him with violating the conditions of his mandatory supervision release.  *Id.*  On May 26, 2021, the Commissioner directed DPP to reprimand Maddox.  (ECF No. 16-19.)  Maddox reported to the Agent's office, and Agent Patterson placed Maddox on Global Positioning System ("GPS") monitoring as a sanction for his having traveled out of the state without Agent Patterson's permission.  (ECF Nos. 16-27 at 2; 16-20.)

  On October 5, 2021, Agent Patterson informed the Commission that Maddox was not in compliance with the conditions of his mandatory release because he failed to cooperate at his assessment interview.  (ECF No. 16-20.)  On October 8, 2021, the Commission served Maddox with a subpoena (ECF No. 16-21) and at the hearing on November 2, 2021, Maddox admitted the violations and Commissioner Miller found Maddox in violation of his release conditions.  (ECF No. 16-22.)  Commissioner Miller continued Maddox on supervised release, ordered that he appear

for a sex offender treatment evaluation within 45 days, and ordered no out-of-state travel with GPS monitoring for 120 days beginning June 30, 2021.  (ECF No. 16-22.)

  **C.**  <u>**March 3, 2022 – Parole Commission Hearing**</u>

  On December 17, 2021, Agent Patterson informed the Commission that Maddox was not in compliance with the conditions of his mandatory supervision release.  (ECF No. 16-23.)  Agent Patterson reported that Maddox had not provided verification of his assessment for sex offender treatment, as previously ordered by Commissioner Miller.  (ECF No. 16-23.)  The Commission issued a warrant on December 21, 2021.  (ECF No. 16-24.)  On February 4, 2022, Commissioner Keckler postponed the hearing to allow Maddox an opportunity to obtain legal representation because Maddox contested the alleged violations.  (ECF No. 16-25.)  On March 3, 2022, Commissioner Lyles held a hearing and found Maddox in violation of his release conditions.  (ECF No. 16-26.)  Commissioner Lyles ordered Maddox to continue on mandatory supervision and attend a sex offender treatment evaluation within 90 days.  *Id.*

  On July 28, 2022, Maddox saw a counselor for a sex offender treatment evaluation who prepared an evaluation report.  (ECF No. 16-31.)  The counselor advised that Maddox did not need to participate in the sex offender treatment program.  *Id.*  DPP does not require Maddox to attend a sex offender treatment program as part of his mandatory supervision release.  *Id.*  Maddox remains on mandatory supervised release until October 5, 2023.  (ECF No. 16-7.)

**III.**  <u>**State Court Litigation**</u>

  On July 30, 2021, Maddox filed a petition for mandamus in the Circuit Court for Baltimore City, Case No. 24-C-21-002086, which he later amended.  (ECF Nos. 16-33; 16-34.)  Maddox contended that the conditions of his release and supervision were improper because he is not a sex offender.  (ECF No. 16-34.)  The Commission moved to dismiss the amended petition and, on

September 28, 2021, the court dismissed the amended petition for mandamus.  (ECF No. 16-36.)
Maddox appealed the dismissal, which the Court of Special Appeals affirmed.  (ECF No. 16-37.)

On November 8, 2021, Maddox filed a second complaint in the Circuit Court for Baltimore
City, Case No. 24-C-21-004939 (ECF Nos. 16-38; 16-39), arguing that he should not be supervised
as a sex offender, that his due process and Fourth Amendment rights had been violated by virtue
of GPS monitoring, and demanding that Chairman Blumberg and Agent Patterson be held
accountable for misconduct in office.  (ECF No. 16-39 at 6, 8, 12.)  He also submitted a request
for the Commission to stop ordering that he attend sex offender treatment evaluation.  *Id.* at 1.  The
Commission filed a motion to dismiss, which was granted on January 24, 2022.  (ECF No. 16-40.)

On March 31, 2022, Maddox filed a third action in the Circuit Court for Baltimore City,
Case No. 24-C-22-001580.  (ECF No. 16-41.)  Maddox requested "a judicial review and stop
Agency order for the Parole hearing on 3/3/2022" relating to the Commission's order that he
undergo sex offender evaluation.  (ECF No. 16-42.)  On May 17, 2022, the court advised that it
does not review decisions of the Commission and denied Maddox's request for waiver of prepaid
appellate costs because the request was incomplete.  (ECF No. 16-43.)  On August 9, 2022,
Maddox submitted additional information to support his petition and request for fee waiver to no
avail.  (ECF No. 16-44.)

## IV.    <u>Maddox's Claims</u>

On July 19, 2022, Maddox filed a Complaint in this court.  (ECF No. 1.)  On September 9,
2022, Maddox filed an Amended Complaint.   (ECF No. 9; together referred to as the
"Complaint").[2]   Construed liberally, Maddox alleges multiple causes of action against the
Commission and the individual Defendants in their individual and official capacities.   The

---

[2] As set forth earlier, the court construes the Amended Complaint as a supplement to the Complaint.

Complaint and Amended Complaint set forth five counts: (1) Violation of 18 U.S.C. § 2; (2) Violation of the Fourth Amendment; (3) Violation of the Fourteenth Amendment; (4) Violation of 18 U.S.C. § 242; and (5) Violation of 18 U.S.C. § 1621.  (ECF Nos. 1 and 9.)  Maddox seeks relief in the amount of $250,000 and requests that a "law be created or amended so that the Parole Commission of Maryland can only govern over a person for that which he or she has been convicted of and any procedures which support that."  (ECF No. 1 at 7.)

## ANALYSIS

As an initial matter, the court is ever-mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers."  *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 U.S. Dist. LEXIS 18223, *6 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)).  "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented."  *Id.*

## I.   Federal Rule of Civil Procedure 12(b)(1) – Sovereign Immunity

Defendants argue that the Commission and individual Defendants sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment.  (ECF No. 16-1 at 17.)

"[U]nder the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents."  *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003).  "While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* MD. CODE, ANN., STATE GOV'T, §§ 12–101, *et seq.*, it has not

waived its immunity under the Eleventh Amendment to suit in federal court." *Id.* Additionally, "for purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003) (citations omitted). That notwithstanding, "the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001). This is known as the *Ex parte Young* doctrine.

Under the *Ex parte Young* doctrine, "a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment." *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 288 (1997). "The exception is premised upon the notion, sometimes called a 'fiction,' that when a State officer violates federal law, he is stripped of his official character, thus losing the 'cloak' of State immunity." *Bragg*, 248 F.3d at 292 (quoting *Coeur D'Alene Tribe*, 521 U.S. at 281, 288) (internal citations omitted)). "Even though 'the State itself will have a continuing interest in the litigation whenever State policies or procedures are at stake,' a court decree enjoining a State officer from committing future violations of federal law generally will not upset the careful federal balance established by the Constitution and confirmed by the Eleventh Amendment." *Id.* (quoting *Coeur d' Alene Tribe*, 521 U.S. at 269). "To preserve this balance, however, this court 'must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.'" *Id.* (quoting *Coeur D'Alene Tribe*, 521 U.S. at 269). Accordingly, "the court must evaluate the degree to which the State's sovereign interest would be adversely affected by a federal suit seeking injunctive relief against State officials, as

well as the extent to which *federal*, rather than State, law must be enforced to vindicate the federal interest." *Id.* at 293.

With respect to the Commission, the Maryland Parole Commission is an agency of the State of Maryland. MD. CODE ANN., CORR. SERVS. § 7-201. Accordingly, the Commission enjoys sovereign immunity under the Eleventh Amendment. As such, the court lacks subject matter jurisdiction to hear claims against the Commission because all claims are barred by sovereign immunity.[3]

It is not abundantly clear to the court whether Maddox brings this action against the individual Defendants in their official capacities. Because the court liberally construes the Complaint, however, the court will address Maddox's claims as though they are brought against the individual Defendants in their official capacities. Because the individual Defendants sued in their official capacities are viewed as the State for purposes of sovereign immunity, the court's inquiry with respect to these claims begins with the *Ex parte Young* doctrine.

Under the *Ex parte Young* doctrine, the first threshold to hold an individual defendant liable for official acts is an allegation of an ongoing constitutional violation. *See Biggs v. North Carolina Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (explaining that "[t]o determine if this exception applies, [the court] consider[s] 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'") (quoting *Verizon Md., Inc. v.*

---

[3] Defendants also argue that Maddox cannot maintain a 42 U.S.C. § 1983 claim against the Commission because it is not a "person" as defined in the statute. (ECF No. 16-1 at 17.)

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ."

42 U.S.C. § 1983. Defendants are correct. "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1980).

*Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  Although Maddox maintains that he "still remains under the supervision of the [COMET] sex offenders division of [M]aryland" (ECF No. 1 at 6), he offers no allegations of current or ongoing constitutional violations by Defendants. Instead, Maddox's allegations detail Defendants' alleged past behavior that resulted in what he claims amount to violations of his constitutional rights.  However, even if Maddox adequately alleged an ongoing constitutional violation by the individual Defendants, he has not requested injunctive or prospective relief that would cure any alleged ongoing constitutional violations. Instead, Maddox asks this court to create or amend a law governing supervision procedures.  This relief is unavailable to Maddox, as it is the responsibility of the Commission, not this court, to promulgate the rules and regulations of supervision.  *See* MD. CODE ANN., CORR. SERVS. § 7-207. Accordingly, this action does not fall within the *Ex parte Young* exception and all claims will be dismissed against the individual Defendants sued in their official capacities on the basis of Eleventh Amendment immunity.

**II.**     **<u>Federal Rule of Civil Procedure 56</u>**

Defendants assert various reasons why Maddox's Complaint should be dismissed for failure to state a claim.  First, Defendants argue Maddox cannot bring a private right of action under the criminal statutes set forth in the Complaint.  (ECF No. 16-1 at 16.)  Second, Defendants argue that Smack and Keckler are entitled to absolute immunity.  *Id.* at 19.  Third, Defendants argue that Maddox fails to state a claim of constitutional magnitude against Blumberg.  *Id.* at 18. Fourth, Defendants contend that Maddox fails to allege that Agents Hall, Patterson, and Moxey violated his Fourth or Fourteenth Amendment rights.  *Id.* at 20-26.  Lastly, Defendants argue that Agents Hall, Patterson, and Moxey are entitled to qualified immunity.  *Id.* at 26-29.

### A.     Criminal Claims

Defendants argue that Maddox's claims under 18 U.S.C. §§ 2, 242, and 1621 fail because Maddox "cannot institute a criminal prosecution in federal court" or "bring a private right of action under §§ 2, 242, and 1621." (ECF No. 20 at 16.)

None of these criminal statutes entitles a claimant like Maddox to a private cause of action, whether civil or criminal. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Accordingly, Maddox may not bring a cause of action based on violations of 18 U.S.C. §§ 2, 242, or 1621. Defendants are entitled to judgment as a matter of law as to Maddox's criminal claims.

### B.     Absolute Immunity

Defendants argue that Smack and Keckler are entitled to absolute immunity to the extent Maddox claims that Smack and Keckler issued warrants for him without probable cause. (ECF No. 16-1 at 19.)

"Absolute immunity, as its name suggests, differs from qualified immunity in that absolute immunity acts as a complete bar to damages claims of any sort, constitutional or otherwise." *Goldstein v. Moatz*, 364 F.3d 205, 212 (4th Cir. 2004). "Absolute immunity has been extended to parole officials because they perform tasks that are functionally comparable to those of judges." *Palmer v. Blumberg*, No. JKB-15-2509, 2015 WL 5102813, at *1 (D. Md. Aug. 27, 2015); *see Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994) (explaining that "[m]ost federal courts . . . have consistently held that parole board members are absolutely immune from their decisions to grant, deny, or revoke parole").

Here, Maddox alleges that Smack and Keckler violated his Fourth Amendment rights by issuing and signing sex offender warrants. (ECF No. 9 at 1.) As the court explained in *Walrath*,

"[t]he issuance of an arrest warrant has several key characteristics in common with a judicial act: it involves the exercise of discretion in applying the law to the facts of a particular case, poses a heightened risk of vexatious litigation, and is 'open to correction through ordinary mechanisms of review.'" *Walrath*, 35 F.3d at 282 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). Smack and Keckler made discretionary decisions based on the information provided from Maddox's supervising agents that Maddox violated the conditions of his parole. Accordingly, Smack and Keckler are absolutely immune from suit based on warrant issuance. *Id.* (explaining that when the defendant did not participate in gathering evidence and made a discretionary decision on the basis of the reports and information provided regarding the plaintiff's alleged violation of his parole, the defendant's "act of signing the arrest warrant is . . . absolutely immune from suit"). Smack and Keckler are entitled to dismissal of all claims against them in their individual capacities.

## C.      42 U.S.C. § 1983 Claims[4]

The court construes the Complaint to bring claims for alleged Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983. Section 1983 "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). Therefore, Maddox "may bring a civil

---

[4] The court notes that Maddox filed three state court complaints against the Commission involving similar issues regarding his mandatory supervised release. Issues of preclusion "may, in 'special circumstances,' be raised *sua sponte*." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)). "[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412 (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting) (citations omitted)). To the extent Maddox argues Defendants violated his Fourth and Fourteenth Amendment rights on the basis of his COMET supervision, in addition to the other reasons set forth herein, the claims are barred by collateral estoppel. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (explaining that "[a] party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that 'the issue sought to be precluded is identical to one previously litigated' []; (2) that the issue was actually determined in the prior proceeding []; (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' []; (4) that the prior judgment is final and valid; and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum'") (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir.1998)).

action to redress due process violations and [Fourth Amendment] violations under 42 U.S.C. § 1983." *Harris v. Meehan*, No. PWG-14-3135, 2015 WL 4717254, at *3 (D. Md. Aug. 6, 2015). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and [] that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.   Chairman Blumberg

Defendants argue that Maddox fails to state a claim "of constitutional magnitude against Chairman Blumberg." (ECF No. 16-1 at 18.)  As stated above, to satisfy the first element under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . ."  *West*, 487 U.S. at 48; *see Baker v. McCollan*, 443 U.S. 137, 140 (1979) (explaining that "[t]he first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'").

Here, Maddox alleges that Blumberg committed perjury in state litigation and requests that Blumberg "be held accountable for perjury and misconduct in office." (ECF No. 1 at 1, 7.) Maddox fails, however, to allege Blumberg violated any "right secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  Accordingly, to the extent Maddox alleges Blumberg, in his individual capacity, violated his constitutional rights under 42 U.S.C. § 1983, Blumberg is entitled to judgment as a matter of law.

### 2.   Fourth Amendment

Liberally construing Maddox's Complaint, he alleges that Agents Patterson and Hall violated his Fourth Amendment rights by placing a GPS monitor on him without authority of the Commission.  (ECF No. 1 at 4.)  He further alleges that Agent Moxey violated his Fourth Amendment rights by tracking his whereabouts for Agents Patterson and Hall.  (ECF No. 9 at 1-

2.)  Defendants argue that they operated under the reasonable belief that Maddox had violated the conditions of his release and therefore did not violate his Fourth Amendment rights by placing him on GPS monitoring.   (ECF No. 16 at 22, 24.)   In support, Defendants rely on *Jones v. Chandrasuwan*, 820 F.3d 685 (4th Cir. 2016).

### a.  *Reasonable Suspicion*

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures' U.S. CONST. AMEND. IV, and 'this usually requires the police to have probable cause or a warrant before making an arrest.'" *Jones*, 820 F.3d at 692 (quoting *Herring v. United States*, 555 U.S. 135, 136 (2009)).

The procedures laid out in COMAR 12.08.01.22.B. provide guidance regarding the process that a supervising parole agent engages in when they have information that a parole violation has occurred.  Initially, the supervising parole agent makes an "application for a warrant of parole violation in every case where the parolee is termed a violator."  COMAR 12.08.01.22.B (2022). Further, "[u]pon satisfactory information alleging that a parolee or mandatory releasee has violated any of the conditions under which he was released, a warrant may be issued, and, after the parolee or releasee is taken into custody, a preliminary hearing shall be provided in accordance with §E, below."  COMAR 12.08.01.22.A(1) (2022).  At the preliminary hearing is when "[t]he hearing examiner shall inquire to determine whether there is probable cause or reasonable grounds to believe that a violation of parole has occurred."  COMAR 12.08.01.22.E(4) (2022).

In *Jones v. Chandrasuwan*, the plaintiff probationer argued that the defendants "violated his Fourth Amendment rights by seeking his arrest for alleged probation violations without reasonable suspicion or probable cause."  820 F.3d 685, 692 (4th Cir. 2016).  The *Jones* court explained:

> Probationers such as Jones, however, "do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." The Supreme Court "has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment."

820 F.3d 685, 692 (4th Cir. 2016) (internal citations omitted); *see Samson v. California*, 547 U.S. 843, 850 (2006) ("[P]arolees are on the 'continuum' of state-imposed punishments . . . [and] have fewer expectations of privacy than probationers because parole is more akin to imprisonment.").

The *Jones* court further explained:

> The government has strong interests both in ensuring that probationers adhere to the conditions of their probation and in effectively redressing probation violations if they do not. These interests are strengthened by the fact that probation is often imposed in lieu of incarceration and that conditions of probation are often intended to prevent future criminal conduct. While the privacy concerns implicated by an arrest are certainly substantial, balancing the governmental and private interests supports a degree of suspicion lower than probable cause for arresting a probationer for an alleged probation violation.

820 F.3d 685, 693 (2016).  Accordingly, the *Jones* court held "that probation officers must have reasonable suspicion before seeking the arrest of a probationer for allegedly violating conditions of his probation." *Id.*

As an individual on mandatory supervised release, Maddox does "not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987).  In each alleged incident, Maddox's supervising Agent had information that Maddox failed to comply with the conditions of his release.  The record before the court demonstrates that at the conclusion of every hearing, the Commission concluded that Maddox had violated conditions of his release.

*See* MD. CODE. REGS. 12.08.01.22.E.(4) (2022) (explaining that at the preliminary hearing the examiner "inquire[s] to determine whether there is probable cause or reasonable grounds to believe that a violation of parole has occurred").  Maddox has not produced evidence that he disputed the facts presented to the Commission and, in one instance, Maddox admitted he violated the conditions of his release.  (ECF No. 16-14.)  Accordingly, Maddox fails to generate a genuine dispute of material fact regarding whether he was in violation of the conditions of his release or otherwise as to the basis for the Commission's conclusions or its processes.  Therefore, Maddox likewise fails to raise a question for the trier of fact as to whether there were proper grounds for issuance of the warrants.  *See Harris*, 2023 WL 2560890, at *8 (explaining that "[a]s for the issuance of an arrest warrant, the Parole Commission found, and the record establishes, that the warrant was valid because there is no basis to dispute that [the plaintiff] failed to report after July 20, 2020, and did not return the polygraph referral forms").

### b.    GPS Monitoring

As explained above, as an individual on mandatory supervised release, Maddox does "not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin*, 483 U.S. at 874. Further, "[a]n individual on mandatory supervision is subject to: (1) all laws, rules, regulations, and conditions that apply to parolees; and (2) any special conditions established by a commissioner." MD. CODE ANN., CORR. SERVS. § 7–502(b); *see* COMAR 12.08.01.21(D)-(E).

Here, enrollment in COMET supervision requires Maddox to comply with certain requirements, which may include electronic GPS monitoring.  The affidavit of Martha Danner, the Director of the Division of Parole and Probation, provides that "[g]iven the nature of the crime for which Mr. Maddox is currently on supervision and his history of leaving the State without

permission, Agent Patterson correctly decided to place Maddox on GPS monitoring in June 2021, as permitted by special condition 34 of his release." (ECF No. 16-27.) Further, the affidavit of Chairman Blumberg explains that GPS "monitoring is a common special condition for supervision of people who pose a high risk of committing a violent crime, people who pose a risk of harm to a particular person, or people who are likely to leave the State without permission." (ECF No. 16-3.) Importantly, Maddox cites no authority to suggest that Agent Patterson, Hall, or Moxey needed permission from the Commission to order electronic GPS monitoring. Maddox therefore fails to generate a dispute of fact on this issue. Defendants are entitled judgment as a matter of law as to Maddox's Fourth Amendment claim.

### 3.   Fourteenth Amendment

The Fourteenth Amendment due process clause provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983." *Denkenberger v. Md. State Parole Comm'n*, No. WDQ-10-1726, 2011 WL 2600544 at *3 (D. Md. June 24, 2011).

Construing Maddox's Complaint liberally, he alleges that Agents Patterson and Hall violated his Fourteenth Amendment right of due process by not providing documents and placing a GPS monitor on him without documenting a reason to do so. (ECF No. 1 at 3.) Defendants maintain that they did not violate Maddox's due process rights by supervising him as a sex offender or by placing him on a GPS monitor. (ECF No. 16-1 at 20, 24.)

### a.   *Parole Revocation Hearings*

"In order to be entitled to the protections of the due process clause, a person must have a constitutionally protected life, liberty, or property interest at stake." *Partlow v. Md. Parole and*

21

*Probation*, No. 12-cv-01892-AW, 2019 WL 6684535, at *3 (D. Md. Dec. 6, 2019).  The Supreme

Court has long recognized that a parolee or probationer has a liberty interest in maintaining that

status, so as to avoid reincarceration.  *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973).  In *Morrissey*

*v. Brewer*, the Court explained:

> Parole arises after the end of the criminal prosecution, including
> imposition of sentence. Supervision is not directly by the court but
> by an administrative agency, which is sometimes an arm of the court
> and sometimes of the executive. Revocation deprives an individual,
> not of the absolute liberty to which every citizen is entitled, but only
> of the conditional liberty properly dependent on observance of
> special parole restrictions.

*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  The *Morrissey* Court further explained that, at a

minimum, a parole revocation hearing should include:

> (a) written notice of the claimed violations of parole; (b) disclosure
> to the parolee of evidence against him; (c) opportunity to be heard
> in person and to present witnesses and documentary evidence; (d)
> the right to confront and cross-examine adverse witnesses (unless
> the hearing officer specifically finds good cause for not allowing
> confrontation); (e) a 'neutral and detached' hearing body such as a
> traditional parole board, members of which need not be judicial
> officers or lawyers; and (f) a written statement by the factfinders as
> to the evidence relied on and reasons for revoking parole.

*Id.* at 489.  The *Morrissey* Court concluded that "[i]f the procedures followed by the Parole Board

are found to meet the standards laid down in this opinion that, too, would dispose of the due process

claims for these cases."  *Id.* at 490.

Here, it is undisputed that Maddox was provided written notice of the alleged violations,

hearings were held, and he received the Commission's decision in each instance.  Accordingly, to

the extent Maddox maintains a due process violation for the procedures used at the parole

revocation hearings, Defendants are entitled to judgment as a matter of law.

                    b.        *Mandatory Supervised Release*

Although Maddox "has a liberty interest in remaining on probation, he is not entitled to a

particular level of probation or particular conditions of probation." *Hashim v. Nelson-Clash*, No.

12-cv-01892-AW, 2013 WL 80155, at *7 (D. Md. Jan. 4, 2013).  Additionally, the Appellate Court

of Maryland[5] has upheld imposition of COMET supervision for sex offenders and those convicted

of crimes of a sexual nature. *Russell*, 109 Md. App. at 543; *Maddox v. Parole Comm'n. of Md.*,

No. 1222, 2022 WL 2693109, at *3-5 (Md. Ct. Spec. App. July 12, 2022).  Last year, the Appellate

Court of Maryland upheld the imposition of COMET supervision for Maddox. *Maddox*, 2022 WL

2693109, at *5.  The court explained:

> Nothing in the sex offender registration statute precludes the
> Commission from imposing sex offender supervision to an inmate's
> limited duration mandatory supervision. The criteria for sex
> offender registration, like those for lifetime sexual offender
> supervision in *Russell*, does not limit the Commission's authority to
> supervise Mr. Maddox as a sex offender given the facts underlying
> his convictions and his repeated violations of other terms of his
> release. And again, "[a]n individual on mandatory supervision
> remains in legal custody until the expiration of the individual's full
> term[,]" and "is subject to[ ] ... any special conditions established by
> a commissioner." The Commission's authority is broad by design,
> and "where a probationer is released from imprisonment early under
> mandatory supervision, the probationer agrees, and is legally
> required, to comply with all conditions of mandatory supervision in
> exchange for his or her early release from imprisonment."

*Id.* (internal citations omitted).

In *Harris v. Ross*, the plaintiff argued that the imposition of COMET supervision violated

his due process rights.  2023 WL 2560890, at *7 (D. Md. Mar. 17, 2023).  The *Harris* court held

that the plaintiff's COMET supervision did not violate his due process rights:

> Moreover, such conditions may be imposed without judicial review
> because mandatory release, like parole, is "uniquely an executive
> function and the enforcement and regulation thereof is vested solely

---

[5] The Appellate Court of Maryland is formerly the Maryland Court of Special Appeals.

> within the Division of Parole and Probation." The authority to
> impose special conditions on an inmate's mandatory supervision
> release is "broad by design" and lies within the discretion of the
> Maryland Parole Commission.

*Id.* (internal citations omitted).

Here, although Maddox maintains that he is not a sex offender and does not have sex offender charges, he fails to generate any dispute regarding the fact that the Commission properly implemented COMET supervision as a condition of his release. Accordingly, to the extent Maddox maintains that COMET supervision violates his due process rights, Defendants are entitled to judgment as a matter of law.

Maddox also maintains that Agents Patterson, Hall, and Moxey failed to obtain Commission authority to impose GPS monitoring on him; however, as discussed in Section II.C.2, *supra*, such action is not required. "The COMET supervision program was created in response to legislation passed by the General Assembly in 2006[,] which mandated the establishment of sexual offender management teams for the supervision of sexual offenders." *Russell*, 221 Md. App. at 522–23. The COMET team "is made up of members from various agencies and offices including the DPP, the local police department, the local State's Attorney's office, and treatment providers." *Id.* at 523. Further, "[a] probationer on COMET supervision is required to comply with a sexual offender management program, which may include intensive reporting requirements, specialized sex offender treatment, electronic GPS monitoring, polygraph testing, computer monitoring, and being compelled to take medication." *Id.*

Maddox's COMET supervision requires him to comply with certain requirements, which may include electronic GPS monitoring. Agent Patterson put Maddox on GPS monitoring after Maddox did not get permission to leave the State of Maryland, and admitted to the polygraph examiner that he, in fact, had left the State. Specifically, in this instance, Agent Patterson informed

the Commission that Maddox violated the condition of his mandatory supervision and the Commission directed Maddox's Agent to schedule a reprimand.  (ECF No. 16-18; ECF No. 16-19.)  Maddox reported to the Agent's office and "the sanction was deemed to be electronic monitoring for which he was fitted with a GPS monitor."  (ECF No. 16-20.)  Subsequently, in another report, Agent Patterson informed the Commission that Maddox violated his special conditions of mandatory release and that he had previously placed Maddox on GPS monitoring; following which the Commission issued a subpoena for Maddox.  *Id.* (ECF No. 16-21.)  Following Maddox's violation admission, the Commission continued Maddox on supervised release under conditions of 120 days of GPS monitoring and no out-of-state travel.  (ECF No. 16-22.)

Maddox fails to generate evidence on which a reasonable juror could conclude that Defendants were not entitled to place him on a GPS monitor as a condition of COMET supervision.  Accordingly, Defendants are entitled to judgment as a matter of law as to Maddox's Fourteenth Amendment claim.

### 4.  <u>Unlawful Detention</u>

Liberally construing Maddox's Complaint, he alleges that Agents Moxey, Hall, and Patterson unlawfully detained him.  (ECF No. 9 at 2.)  Defendants argue that if Maddox "is claiming that he is entitled to monetary damages under § 1983 as the result of illegal confinement, he must allege that his conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid by a state tribunal authorized to do so."  (ECF No. 16-1 at 23.)  In support, Defendants rely on *Heck v. Humphrey*, 512 U.S. 477 (1994).

To the extent Maddox seeks damages under § 1983 for an alleged unconstitutional conviction or imprisonment, he must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . ." *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). In *Heck v. Humphrey*, the Supreme Court held:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487. "[T]he preclusive effect of *Heck* is applicable even if the plaintiff is no longer in custody." *Gibbs v. S.C. Dept. of Probation, Parole, and Pardon Services*, 168 F.3d 481, 1999 WL 9941, at *2 (4th Cir. Jan. 12, 1999); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (explaining that Heck "applies to proceedings that call into question the fact or duration of parole or probation").

Maddox has not alleged that the Commission's orders were reversed, expunged, or invalidated. A determination in favor of Maddox on an illegal confinement claim would necessarily imply the invalidity of the Commission's orders. Accordingly, to the extent Maddox's Fourth Amendment claim is based on illegal confinement in connection with his revocation proceedings before the Commission, it is barred by *Heck*.

### D.   Qualified Immunity

Defendants argue that they enjoy qualified immunity from Maddox's claims brought against them in their individual capacities under 42 U.S.C. § 1983. (ECF No. 16-1 at 26.) Specifically, Defendants contend that because Maddox has failed to state a constitutional claim, they are entitled to qualified immunity. *Id.* at 27. In the alternative, Defendants argue that even if

Maddox stated a constitutional claim, they are entitled to qualified immunity because they did not violate any clearly established statutory or constitutional right of which a reasonable public official would have known. *Id.* at 26.

A government official sued in his individual capacity may invoke the protection afforded by qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow*, 457 U.S. at 817). If the court determines that a government official took action that a reasonable officer would have believed was lawful the official is entitled to dismissal before discovery. *Id.*

"Determining whether qualified immunity is appropriate is a two-step inquiry." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). "First, a

court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right." *Id.* "Second, the court must consider whether the right at issue was "clearly established" at the time of the alleged misconduct." *Id.* Stated differently, "[r]uling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right." *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992). "The first two of these present pure questions of law for the courts." *Id.* (citing *Harlow*, 457 U.S. at 818). "[T]he narrow threshold question whether a right allegedly violated was clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court, hence is always capable of decision at the summary judgment stage." *Id.*

As discussed above, Maddox fails to generate a dispute of fact as to his claim that Defendants violated his constitutional rights. While this alone entitles Defendants to qualified immunity as a matter of law on Maddox's 42 U.S.C. § 1983 claim, the court will address Defendants' remaining argument.

Defendants argue that even if Maddox demonstrated a violation of a constitutional right, the rights Maddox alleges were violated were not clearly established at the time of the alleged violation. (ECF No. 16-1 at 26.) "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640). Stated differently, "'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson*, 483 U.S. at 640). "The 'salient question' is whether the state of the law at the time of

28

the events in question gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope*, 536 U.S. at 741).

The only right apparent to this court as alleged by Maddox is the right to be free from an arrest lacking reasonable suspicion.  *See Jones*, 820 F.3d at 693 (holding that "probation officers must have reasonable suspicion before seeking the arrest of a probationer for allegedly violating conditions of his probation").  As discussed at length in Section II.C.2, *supra*, Defendants had reasonable suspicion to believe that Maddox violated the conditions of his parole.  Accordingly, Defendants are entitled to qualified immunity.

## CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion to Dismiss or, in the Alternative Summary Judgment, construed as a Motion for Summary Judgment (ECF No. 16) is GRANTED.

/S/

_____
Julie R. Rubin
United States District Judge

May 25, 2023